[No. 12610.  *En Banc.*  February 21, 1916.]

*In re* WEST WAITE STREET, SEATTLE, B. MAY WHITE *et al.,*
*Appellants.*[1]

APPEAL — ABSTRACTS OF RECORD — STATUTES — RETROACTIVE OPERA-
TION.  Laws of 1915, p. 300, dispensing with abstracts of record on appeal in certain cases, whereby failure to file the abstract is no longer ground for dismissal of the appeal, being remedial and intended to relieve from hardships in a matter of procedure not affecting the merits, will be given effect as to appeals pending before the passage of the act.

APPEAL—RECORD—BILL OF EXCEPTIONS OR STATEMENT OF FACTS—
NECESSITY.  Where the invalidity of the order, appealed from as void on its face, appears from the transcript, no bill of exceptions or statement of facts is necessary.

TRIAL—VERDICT—CORRECTION—POWER OF COURT—EMINENT DOMAIN
—AWARD.  After a verdict is rendered and the jury is discharged, the court is without power to correct the verdict in matters of substance on the ground of inadvertence or mistake; and the correction of a verdict in eminent domain proceedings so as to divest the owners of title to a building which the verdict as rendered permitted them to remove, is a change in substance, reducing the amount of the verdict, which the court cannot make.

Appeal from an order of the superior court for King county, Tallman, J., entered September 14, 1914, modifying a judgment and verdict rendered in condemnation proceedings, after a hearing before the court.   Reversed.

[1]Reported in 155 Pac. 165.

*Charles M. Baxter*, for appellants.

*James E. Bradford, Melvin S. Good*, and *W. D. Covington*, for respondent.

FULLERTON, J.—In March, 1912, the city of Seattle, by ordinance duly enacted, provided for the establishment of a public street and highway in that city, called in the record West Waite street. The establishment of the street necessitated the taking and damaging of a large number of tracts of property held in private ownership, among which tracts were lot 1 and a portion of lot 2, all in block 1 of Madrona addition to West Seattle, owned by the appellants in this action. The ordinance authorized and directed the corporation counsel of the city to commence and prosecute such actions and proceedings as were necessary to acquire the property, and to ascertain the compensation to be paid the owners of the property taken and damaged in such acquisition. Pursuant to the authority thus conferred, the corporation counsel began the present action for the purpose directed, and, in the course of the proceeding, took a judgment of condemnation of the property of the appellants described in the ordinance, and had the compensation to be awarded them therefor fixed by a jury. The jury's verdict was as follows:

"We, the jury in the above entitled proceeding, duly impaneled and sworn, find that the just compensation to be paid to the owners, occupants and persons otherwise interested therein for the taking of the following described real property, to wit:

"That portion of lots one and two (1 and 2), block one (1), Madrona addition to West Seattle, now a portion of the city of Seattle, described as follows:

"Beginning at a point on the east line of said lot two (2), said point being distant twenty-eight and eighty-two one-hundredths (28.82) feet north from the southeast corner of said lot; thence north along the east line of said lots two and

one (2 and 1) a distance of thirty-one and eighteen one-hun-
dredths (31.18) feet to the northeast corner of said lot one
one (1); thence west along the north line of said lot one (1)
a distance of eighty (80) feet to the northwest corner there-
of; thence south along the west line of said lots one and two
(1 and 2) a distance of thirty and sixty-six one-hundredths
(30.66) feet; thence easterly along a straight line a distance
of eighty (80) feet to the point of beginning. North ten
(10) feet of lot three (3), block one (1) in Madrona addi-
tion to West Seattle which the defendants King county,
B. May White and A. L. White, her husband; Northern Life
Insurance Co. a corporation; Jo Grace Million Brice and . .
Brice, husband and wife; Ethlyn Million and . . Million, her
husband claim to own or to be otherwise interested in, is the
sum of forty hundred eighty nine and 60-100 dollars, which
sum includes the cost of readjusting or moving the building
—standing in whole or in part upon said land, to or upon
the part of the land remaining, together with the deprecia-
tion in the market value of said building—by reason of said
readjustment or moving. And we find that remainder of
said lot not damaged by reason of the taking of said de-
scribed real property."

The verdict was returned on July 10, 1913, and on the
same day a judgment in condemnation was entered in ac-
cordance with the verdict, to become operative on the pay-
ment to the appellants, or into the registry of the court, of
the sum awarded by the jury. The appellants accepted the
award of the jury without further contest, and later on the
sum awarded was paid.

In July, 1914, nearly one year after the verdict had been
rendered, the corporation counsel filed a petition with the
trial court seeking a modification of the verdict and judg-
ment. In the petition it is alleged that, in the verdict and
judgment, certain language was used by inadvertence and
mistake; that the verdict, instead of finding that the sum
awarded included "the cost of readjusting or moving the
building, standing in whole or in part upon said land, to or
upon the part of the land remaining, together with the de-

preciation in the market value of said building by reason of said readjustment or moving," should have found that it included ". . . the cost of taking the buildings, trees and shrubbery, standing in whole or in part upon said land, and that the remainder of said lots is not damaged by reason of the taking of said described real property." On the presentation of the petition, the court granted the same *ex parte*, modifying the judgment as requested. Later on, however, on the motion of the appellants, it set aside the *ex parte* order and set the matter down for a further hearing. On the subsequent hearing, it again granted the prayer of the petition, and modified the judgment accordingly. This appeal is from the order so entered.

The city moves to dismiss the appeal, basing its motion upon the grounds: (1) that the appellants' abstract was not served at the time of the serving of their opening brief, nor within the time they were required to file and serve such a brief; (2) that the abstract filed does not comply with the statute nor the rules of the court; (3) that the statement of the case in the appellants' brief does not refer to the abstract; and (4) that there has been no bill of exceptions or statement of facts filed and certified in the cause by the appellants, nor has any attempt been made to comply with the requirements of the statute in regard thereto.

Since the appeal in this cause was perfected, the act of the legislature of 1915 relating to the abstracts has gone into effect (Laws 1915, p. 300). It provides that, in all cases where no testimony is sent up with the record, or in which the statement of facts does not exceed one hundred pages of double space, typewritten evidence, no abstract of record shall be required. The present case falls within the exception, and the failure to file an abstract, or the filing of one defective in form, is, in such cases, no longer a ground for dismissing an appeal. This provision of the statute, we think, is applicable to the present appeal. The legislature

may not, of course, pass retroactive laws prescribing penalties for acts and omissions which were lawful when committed or omitted, but it may excuse delinquencies in matters of practice in pending proceedings, past as well as future. When the statute relates purely to remedies and will not work hardship or injustice, but will, on the other hand, better protect and preserve the rights of the parties, it will be given effect, even though the statute existing when the act of delinquency was committed might call for a different remedy. The delinquency complained of in the case at bar in no way affects the merits of the controversy, it was a mere incident of procedure; and since the legislature has said, in effect, that it is no longer a cause for denying to a party the right to have his cause heard on its merits, the court will give effect to the act, even as to causes pending when the act took effect.

The fourth ground of the motion is also without merit. The appellant contends that the order appealed from is void on its face, being one beyond the power of the court to make. This will appear, if it appears at all, from a transcript of the record. No bill of exceptions or statement of facts is necessary to show it. We conclude, therefore, that the motion to dismiss is not well taken.

On the merits of the controversy, we are clear that the court was in error. The fact that the verdict does not conform to the evidence, or is rendered through mistake and inadvertence, is a cause for setting aside the verdict, or, if not discovered until after judgment is entered, is a cause for setting aside both the verdict and judgment, but it does not give the court power to correct the verdict. The verdict is the jury's, not the court's, and the court's power in such cases is limited to seeing that the jury return a verdict correct in form and substance. It may not, after the verdict has been returned and the jury discharged, change it, over the objection of either of the parties, in matters of sub-

stance. The change here made by the court was such a change. Under the verdict of the jury the appellants remained the owners of the building standing on the land condemned. They were at liberty to remove it and readjust it on the remaining portion of their property, or to dispose of it in any other manner they should deem fit, so long as they removed it from the property condemned. The change made by the court takes the building away from the appellants and vests title to it in the city. This is as much of a change in substance as it would have been had the court, under the same circumstances, ordered a reduction in the amount of the award made by the jury.

The city, in its brief, makes the statement that the condemnation proceedings involved numerous separate tracts of property, in some of which it was necessary to take the buildings thereon, and in others to permit their removal and readjustment; that forms of verdicts were printed and prepared for the use of the jury suitable for each condition, and that, in the appellants' case, a wrong verdict was by mistake given the jury. But if the record showed these facts, we cannot think the case would be altered. It is not claimed that the jury knew that such a mistake had been committed, and it is not to be presumed that they did not measure the value of the property taken in accordance with the form of the verdict submitted to them. At most the error would amount to a mistrial of the issues between the city and the appellants, requiring them to submit the question to another jury. It could not give the court authority to direct that a verdict be recorded as the verdict of the jury different in substance from that which the jury returned.

The order appealed from is reversed, and the cause remanded with instructions to deny the city's petition to annul the judgment in so far as it affects the property of the appellants.

MOUNT, HOLCOMB, BAUSMAN, CHADWICK, and PARKER, JJ., concur.