*In re* OWEN AND MEMORIAL PARKS IN CITY OF DETROIT.

1. EMINENT DOMAIN—JURY JUDGE OF LAW AND FACTS.

In condemnation proceedings the trial judge has not the power of control over the proceedings and verdicts possessed by him in common-law actions, and while he may confirm or set aside the award reported to him, he may not give binding instructions; the jury being judge of both law and facts.

2. SAME—IF AWARD EXCESSIVE JUDGE MAY NOT REDUCE IT, BUT SHOULD SET ASIDE AND ORDER NEW TRIAL.

If, in condemnation proceedings, the trial judge, reaches the conclusion that the award is excessive, he may not reduce the award, and, as so reduced, confirm it, but he should refuse to confirm, and award a *venire de novo*, since, under the Constitution (article 13, §§ 1, 2), the question of compensation as well as that of necessity is committed to the jury, and the right thus secured must be maintained in its entirety.

Case-made from recorder's court of Detroit; Jeffries (Edward J.), J.  Submitted June 15, 1928. (Docket No. 85, Calendar No. 33,836.)  Decided October 1, 1928.

Condemnation proceedings by the city of Detroit to acquire land for park purposes.  From an order, conditionally affirming an award, plaintiff appeals. Reversed.

*Clarence E. Wilcox,* Corporation Counsel, and *John H. Witherspoon,* Assistant Corporation Counsel, for appellant.

*Wurzer & Wurzer,* for appellee.

*Campbell, Bulkley & Ledyard (Selden S. Dickinson, of counsel), amicus curiæ.*

FELLOWS, J. The city of Detroit instituted this proceeding to condemn substantially four acres of land for park purposes. The first jury found no necessity. A new trial was granted, resulting in a finding of necessity by the second jury and an award of $1,591,083.69. A motion for a new trial on behalf of the city based on various grounds was heard on testimony taken in open court, some two weeks being consumed in such hearing. At the conclusion the trial judge found that the award was excessive, and ordered that a new trial be granted unless the owners consented to a reduction of the award by the sum of $249,862.44. The owners of both parcels filed such consent without waiving their rights to be here heard on their respective contentions in case the city appealed. The city did not consent to the entry of judgment in this form and has appealed to this court. There were many interesting questions, legal and others, raised in the case, and considerable acrimony developed in the court below. However, we think there is an outstanding controlling question in the case which alone will be considered. The trial judge found that the verdict was excessive. This finding is not only supported by the evidence, but is in accordance with the overwhelming weight of the testimony and has our entire approval. If under these circumstances, the provisions of our Constitution dealing with eminent domain inhibit the trial judge from fixing the final amount which the city shall pay, then the case must go back for a new trial. The question, therefore, is the power of the trial judge under our Constitution to enter the judgment entered in this case.

The power of the trial court and of this court in common-law actions to reduce the amount of the recovery from that found by the jury with the consent of the plaintiff and against a nonconsenting defendant has long been recognized. If this were a common-law action, the judgment would be affirmed as against this objection. But in condemnation proceedings the trial judge has not the power of control over the proceedings and verdicts possessed by the trial judge in common-law actions. He may, of course, confirm or set aside the award reported to him, but he cannot give binding instructions, and the jury is the judge of both law and facts. This is settled by cases too numerous to cite. Under our Constitution, the question of necessity as well as that of compensation is committed to the jury, and the jury reach their conclusion on both questions guided by their views of the law as well as their view of the facts. May the trial judge, under our constitutional provisions, if he reaches the conclusion that the award is excessive, himself reduce the award, and, as so reduced, confirm it, or should he refuse to confirm and award a *venire de novo?* We think the latter is the proper course under our Constitution. If the right there secured of a trial of both questions involved in condemnation proceedings by a jury is to be maintained, it must be maintained in its entirety; a jury may not settle one of the questions and the trial judge the other, if constitutional rights are to be observed. Rights secured by the Constitution are secured as well to the petitioner as to respondents. The constitutional provisions are found in article 13 of the Constitution and are as follows:

"Section 1.    Private property shall not be taken by the public nor by any corporation for public use,

without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law.

"Sec. 2. When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve free-holders residing in the vicinity of such property, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law: *Provided,* That the foregoing provision shall not be construed to apply to the action of commissioners of highways or road commissioners in the official discharge of their duties."

Our attention is not called to any Michigan case where the precise question here involved was before the court, but there are two cases at least in this State which, by analogy, are applicable. In *City of Grand Rapids* v. *Coit,* 149 Mich. 668, the award was inadequate; it was below the lowest figure given in the testimony. The trial judge made an order granting a new trial unless the city consented to adding a sum fixed by him. This the city consented to do. It was held that the trial judge was in error in taking the course he did and in not granting a new trial. In *Ontonagon R. Co.* v. *Norton,* 236 Mich. 187, the commissioners had found a necessity for a railroad but not a necessity of taking the particular land; the trial judge held as matter of law that the necessity was established and referred the matter back to the commission to fix the damages. This action was reversed by this court. In disposing of the case, it was said by Chief Justice Bird, speaking for the court:

"If the circuit court could find a public necessity from the proofs in this case it might find it in every

case where it happened to disagree with the jury, and if this were so the foregoing constitutional provisions would be of very little importance.

"But counsel argue that the court sets aside findings of a jury in such cases, and if the court was of the opinion that the findings of the jury on the question of necessity were overwhelmingly against the weight of the evidence, it could set aside the finding of necessity or no necessity. This might be true had not the Constitution made a jury the sole arbiter of the question of necessity.    *    *    *

"It is argued that the commissioners were influenced by extraneous matters and by local prejudice against the Ontonagon Railroad Company and that this justified the action of the court. If the court was of this opinion it could set aside the finding and order a new inquest, but it could not determine the question of necessity itself any more than it could determine a question of fact in any ordinary lawsuit about which the jury might disagree. A careful reading of the testimony convinces us that extraneous matters did get into the hearing. Matters of exorbitant rates charged by plaintiff were gone into at some length and were quite likely responsible for this finding by the commissioners. In view of this the circuit court was justified in setting aside the findings, but it should have referred both questions to a new inquest instead of determining the question of necessity itself."

There is a paucity of decisions in other States. So far as we have been able to find authority, it sustains the views we have expressed. In *Ayer* v. *City of Chicago*, 149 Ill. 262 (37 N. E. 57), it was said:

"But we think, that the judgment of December 7, 1892, which lies at the basis of this supplemental proceeding, was void for another and more serious reason, whether the court has the power to amend

such a condemnation judgment as this after the close of the term, or not. The constitution of the State provides (Art. 2, § 13), that 'private property shall not be taken or damaged for public use without just compensation,' and that 'such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law.' It is the constitutional right of these appellants, not only to have just compensation for the strip of land taken from them, but also to have the amount of that compensation awarded to them by a jury. When the court set aside the judgment based upon the verdict of the jury, and changed the verdict in the manner already stated at a subsequent term, and in the absence and without the consent of the jury, or of appellants, there was a new verdict rendered, not by a jury, but by a court acting without a jury. The judgment of December 7, 1892, was based upon this new verdict of the court, and consequently the compensation fixed by it was awarded in a manner not authorized by the organic law. In the exercise of the power of eminent domain, which takes the property of the citizen away from him without his consent, the limitations prescribed by the constitution should be strictly observed, and the statutes passed in pursuance thereof should be strictly complied with.''

*In re West Waite Street,* 89 Wash. 688 (155 Pac. 165), was a condemnation case. The court had amended the verdict and judgment with reference to a building on the condemned land. Disposing of the case, it was said:

"On the merits of the controversy, we are clear that the court was in error. The fact that the verdict does not conform to the evidence, or is rendered through mistake and inadvertence, is a cause for setting aside the verdict, or, if not discovered until after judgment is entered, is a cause for setting aside both verdict and judgment, but it does not give

the court power to correct the verdict. The verdict is the jury's, not the court's, and the court's power in such cases is limited to seeing that the jury return a verdict correct in form and substance. It may not, after the verdict has been returned and the jury discharged, change it, over the objection of either of the parties, in matters of substance. The change here made by the court was such a change.''

In *Parsons, etc., R. Co.* v. *Montgomery,* 46 Kan. 120 (26 Pac. 403), the court recognized that exceptional cases might arise justifying reductions in verdicts in condemnation cases, but, in disposing of the case, said:

''Apart from the evident disposition of the jury to adopt the highest and most extreme estimate of value, depreciation, and damage, the action of the trial court reducing the award as returned by the jury from $3,327.08 to $2,589 is to be regarded as very suggestive of the fact that the jury was influenced by passion and actuated by prejudice in returning an excessive verdict. We have searched the record in vain to discover, if possible, the reason that induced or the motive that controlled the trial judge in the reduction of the verdict. It may have seemed to him, as it does to us, that, taking into consideration all the facts established by the evidence, the mere size of the verdict created a conviction that it was too large. If this is so, he ought to have set aside the verdict and granted a new trial, rather than have attempted to substitute his judgment for that of the jury. The railroad company is entitled to have a fair estimate of damages made by an impartial jury, and we have grave doubts as to whether there has been a due observance of its legal rights in this respect. While it appears to us that the award of the jury is excessive, it is not the function of the court to say how much. The amount

ought to be determined by a fair and impartial jury, without prejudice or passion."

See, also, *Minot* v. *City of Boston*, 201 Mass. 10 (86 N. E. 783, 25 L. R. A. [N. S.] 311); *Matter of Commissioners of Central Park*, 61 Barb. (N. Y.) 40.

Having correctly found that the award was excessive, the trial judge should have refused to confirm it, and instead of fixing the amount the city should pay, should have sent the case to a new jury for a new inquest.

The judgment will be reversed, and the case remanded to the court below, where an order for a new trial will be entered. Costs of this court will abide the final outcome.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.